MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email: mmcgrath@mcrazlaw.com
        irothschild@mcrazlaw.com
        ecfbk@mcrazlaw.com
By: Michael McGrath, # 6019
        Isaac D. Rothschild, # 25726
        61078.7

(Proposed) Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| LODGE PARTNERS, L.L.C., | No. 4:16-bk-13418-BMW |
| Debtor. | **EMERGENCY MOTION TO OBTAIN POST-PETITION FINANCING** |
| EIN: 86-0858146 | |
| Address: 306 N. Alvernon Way, Tucson, AZ 85711 | |

Debtor and debtor-in-possession Lodge Partners, L.L.C., the owner and operator of the Lodge on the Desert hotel and restaurant ("Lodge" or "Debtor") moves this Court pursuant to 11 U.S.C. §§105, 361, 362, 364(c)(3) and 507 and Rule 4001, Fed. R. Bankr. P. to authorize it, on an interim and final basis, to incur postpetition financing and grant liens to secure post-petition financing on the Debtor's personal property, both tangible and intangible at the commencement of this case or acquired thereafter (the "Personal Property").

The Debtor requests preliminary approval of the post-petition financing and for the Court to set further hearings on final approval of the post-petition financing. At the final

hearing the Debtor requests that post-petition financing be cross-collateralized with the pre-petition loan made by Lodge In Tucson, LLC to the Debtor.

This Motion is supported by the *Omnibus Declarations of John E. Rutherford, II and Peter LaFemina* (filed contemporaneously or within the following business day) and the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     FACTUAL BACKGROUND**

1.     Lodge Partners, L.L.C. d/b/a Lodge on the Desert is an Arizona corporation that owns a boutique hotel and restaurant, and owns the real property on which the business operates.

2.     At the time of filing the bankruptcy, Lodge Partners is unaware of its liquid assets, as all assets are controlled by a receiver. Trigeld, Inc., whose receivership over the Debtor's assets became effective on November 18, 2016.

3.     The Debtor simultaneously has sought return of the Estate assets to the Debtor in possession and provided the Court with a budget through the end of the year.

4.     The proposed budget shows a proposed expenditure of $185,000 of insurance proceeds derived from painting, stucco, and roof repairs that need to occur in excess of $185,000.00.

5.     This Court has jurisdiction to consider this *Motion* pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b).

6.     Venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

*Compliance with Rule 4001(c) and Local Rule 4001-4*

7.     The Debtor has agreed to the terms of a post-petition financing arrangement the material terms of which as set forth in the Term Sheet attached as Exhibit A (the "Term Sheet") to the proposed form of Interim Order with Lodge In Tucson, LLC ("LIT" or "Post-

Petition Lender") pursuant to which the Post-Petition Lender will grant Debtor a credit line of up to $100,000 on an interim basis and consider further loans of up to $250,000 on a final basis, which amount is necessary to maintain the Debtor's on-going operations and preserve its going concern value. In exchange, the Debtor will:

    a)    seek entry of an interim order in the form attached as <u>Exhibit 1</u> or in form and substance acceptable to the Post-Petition Lender and a final order in form and substance acceptable to the Post-Petition Lender (the "Final Order");

    b)    grant to the Post-Petition Lender a lien pursuant to 11 U.S.C. §364(c)(3) on all existing and after acquired personal property, tangible and intangible of the Debtor (the "Personal Property");

    c)    request that the Court orders constitute conclusive evidence of the validity, perfection, and priority of the liens provided for therein;

    d)    allow the Post-Petition Lender to cease advances immediately upon the declaration of a default by the Post-Petition Lender and providing that the Post-Petition Lender may seek such other relief as the Post-Petition Lender believes is appropriate, including without limitation, termination of the automatic stay;

    e)    upon entry of the Interim Order, be bound by and authorized and directed to comply with the Term Sheet, to borrow funds thereunder, and to take all actions necessary to comply with the Term Sheet and the Interim Order;

    f)    the Final Order shall cross-collateralize the pre-petition loan with the post-petition loan on the Personal Property; and

    g)    upon entry of the Final Order, enter into the Final DIP Agreement (as defined in the Term Sheet) and the other documents and instruments required thereby, borrow funds thereunder, and take all actions necessary to comply with this Final DIP Agreement and any Final Order.

### *The Debtor's Financing Needs*

8.     The Debtor cannot operate its business without operating funds or complete a reorganization that will provide a return to unsecured creditors without funds to fund administrative expenses and pay for operations. The Debtor's business depends on cash to pay employees, advertise, and pay vendors.

9.     The Debtor is current unaware of how much liquidity the Debtor will have to operate through the pendency of this case, but January is typically a slow period of time. Thus the Debtor has a need for the post-petition financing in order for it to be able to continue to operate.

### *The New DIP Loan Proposal*

10.     The Debtor has previously borrowed $100,000 from LIT secured by the Debtor's interest in personal property. The Debtor used said funds to retain proposed counsel for the Debtor in possession, pay for pre-petition chapter 11 preparations and for a retainer for the Chapter 11 proceeding.

11.     The Debtor proposes to enter into a loan ("DIP Loan") with LIT subject to this Court's approval. The Debtor proposes to borrow post-petition up to $250,000.00 from the Post-Petition Lender secured by a lien on the Debtor's personal property.

12.     A summary of important terms of the proposed DIP Loan is set forth in Term Sheet attached to Exhibit 1 – the Debtor specifically note the following provisions of the term sheet and the proposed Interim Order:

   a)     <u>Maturity Date</u>. Any and all current outstanding principal amount of the DIP Loan plus any unpaid accrued interest is due and payable on the earlier: (i) a date that is two years after the commencement of the Debtor's bankruptcy case; (ii) the entry of an order confirming a plan of reorganization pursuant to an order of this Court; or (iii) the termination of the DIP Loan in accordance with the DIP loan documents.

b)    <u>Pricing</u>. The effective interest rate for all post-petition advances is to accrue at eight percent (8%) per annum. Interest is payable quarterly in arrears. There are no origination fees associated with this loan.

c)    <u>Payments</u>. Payment of current outstanding principal, accrued interest and fees will be payable at the Maturity Date. The Debtor has the right to pre-pay the DIP in an amount equal to 100% of the outstanding principal plus any unpaid accrued interest without penalty.

d)    <u>Events of Default</u>. The DIP Loan documents will contain the usual and customary default, including dismissal or conversion of these Chapter 11 cases, and a merger or other change of control transaction.

e)    <u>Carve-Out</u>. The DIP Lender agrees that the liens granted under the DIP Loan will be subject to the following "Carve-Out" expenses:

(1)    statutory fees payable to the United States Trustee pursuant to 28 U.S.C. §1930;

(2)    fees payable to the Clerk of the Court.

13.    The terms of the proposed DIP loan are favorable under the circumstances. The DIP Lender has agreed not to prime any parties' security interest. Without the DIP Lender's commitment to the DIP Loan and the working capital provides, the feasibility of cases would be at risk.

## II.    APPLICABLE LAW TO THE POST-PETITION FINANCING

The Bankruptcy Code authorizes a debtor in possession to obtain financing post-petition pursuant to §364. This section permits the Court, after notice and hearing, to authorize a debtor to obtain credit or the incurring of debt secured by a lien on property of the estate if the debtor is unable to obtain unsecured credit allowable as an administrate expense pursuant to §503(b)(1). In this regard §364 provides:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

(c)    If the trustee is unable to obtain unsecured credit allowable under §503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or incurring of debt –

(3) secured by a junior lien on property of the estate that is subject to a lien.

Despite efforts over the last six months, the Debtor has been unable to locate financing for its property and operations claims. As a result, the Debtor accepted the DIP Lender's proposal for post-petition financing secured by a lien on real estate. *In re Snowshoe Company*, 789 F.2d 1085, 1088 (4th Cir. 1986) (the trustee contacted other financial institutions in the immediate geographic areas and was unsuccessful in obtaining unsecured credit); *In re 495 Central Park Avenue Corp.,* 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (unsuccessful attempt to secure financing from other sources justified senior priority loan under Bankruptcy Code §364); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (that the debtors had contacted four lenders satisfied the requirements of Bankruptcy Code §364 that debtors were unable to obtain comparable financing on an unsecured basis).

In these circumstances, the Bankruptcy Code imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable. *In re Snowshow Company,* 789 F.2d at 1088. There are few lenders likely to be able or willing to extend the necessary credit to the Debtor, it would be unrealistic and unnecessary to require the debtor to conduct an exhaustive search for financing. *See In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

The Debtor has not been able to raise capital despite its best efforts over the last six months. Recently, the Debtor has been limited in its ability to seek out financing due to the imposition of a Receiver – however after careful analysis, careful and time-consuming deliberations among the Debtor's restructuring counsel and advisors, the Debtor reasonably

concluded that financing through the DIP Lender was the best alternative. Accordingly, the Debtor has concluded in their business judgment that the Facility provided by the Postpetition Lender is the most favorable for the estate, and it may provide an expedient resolution to this Chapter 11 case. Consequently, the Debtor's efforts in this regard satisfy the statutory requirements of § 364(c).

The proposed terms of the DIP Loan are reasonable and the purpose of the DIP Loan is to enable the Debtor to maintain the stability of its operations during this Chapter11 case. See *In re First South Savings Assoc.,* 820 F.2d 700, 710-15 (5th Cir., 1987); *In re Tenney Village Co.*, 104 B.R. 562, 568-69 (Bankr. D.N.H. 1989). With authority for access to the DIP Loan of up to $100,000.00 on an interim basis and up to $250,000.00 upon entry of the Final Order, the Debtor believes that it can maintain the stability of its operations during the remainder of this Chapter 11 case. In reaching this conclusion, the Debtor believes that the market generally and vendors often respond favorably to approval of a comprehensive debtor in possession financing package. The Debtor's ability to transition ownership as a going concern depends on continued operations and the generation of cash flow, which requires access to working capital.

As described above, after appropriate investigation and analysis, the Debtor has concluded that pursuing the Facility with Post-Petition Lender is the best alternative available under the circumstances. Bankruptcy courts routinely defer to the Debtor's business judgment on most business decisions, including the decision to borrow money. See *Group of Institutional Investors vs. Chicago Mil. St. & Pac. Ry.,* 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.,* 47 B.R. 444, 449 (D. Colo., 1985) (business judgment should be left to the board room and not to the bankruptcy court); *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio, 1983). More exacting scrutiny would slow the administration of the Debtor's estate and increase the cost, interfere with the Bankruptcy Code's provisions for private control of administration of the estates, and threaten the

Court's ability to control a case impartially. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1311 (5th Cir. 1985).

In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.,* 14 B.R. 507, 511-13 (Bankr. D. Utah, 1981) (courts generally will not second guess a debtor's business decision when those decisions involve a business judgment made in good faith, upon a reasonable basis, and within the scope of authority granted under the Bankruptcy Code) *Curlew Valley*, 114 B.R. at 513-14.

The Debtor has exercised sound business judgment seeking advice from their restructuring advisors in determining that pursuing the DIP Loan is appropriate, and have satisfied the legal prerequisites to borrow under the Facility. The terms of the Facility are fair and reasonable and are in the best interest of their estates. Accordingly, under the Bankruptcy Code, §364(c), the Debtor should be granted authority to enter into the DIP Loan and to borrow funds from the Post-Petition Lender on the basis described above.

## III.  RELIEF REQUESTED

The Debtor respectfully requests this Court, subject to the lodging of a form of order that is approved by the Post-Petition Lender:

A.  Grant Debtor's request for authority to enter into the DIP Loan on an interim basis and be bound by the Term Sheet, borrow funds thereunder and execute and comply with all documents required thereby;

B.  Set a subsequent hearing, as may be necessary, on the final term of the DIP Loan and grant authority for the Debtor to enter into an agreement to borrow funds thereunder and execute and comply with all documents required thereby;

C.  Set a final hearing on Debtor's *Motion for Authority* to enter into the DIP Loan; and

D.      Enter the Interim Order and the Final Order.

DATED:  November 26, 2016                    MESCH CLARK ROTHSCHILD


                                             By    s/ Isaac D. Rothschild #25726
                                                  Michael McGrath
                                                  Isaac D. Rothschild
                                             (Proposed) Attorneys for Debtor

COPIES served as indicated below
on November 26, 2016:

Renee Shandler Shamblin                      Tamalyn E. Lewis, Damien R. Meyer,
Office of the United States Trustee            and Meaghan K. Kramer
230 N. First Avenue, Suite 204               Engelman Berger, P.C.
Phoenix, AZ 85003                            3636 N. Central Ave., Suite 700
Email renee.s.shamblin@usdoj.gov             Phoenix, AZ  85012
                                             Email tel@eblawyers.com
                                             Email drm@eblawyers.com
                                             Email mxk@eblawyers.com
                                             Attorneys for Palatine Tucson LLC


By    s/ M.B. Thompson

23W2511.DOCX

1
2
3
4
5
# EXHIBIT 1
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone:   (520) 624-8886
Fax:     (520) 798-1037
Email: mmcgrath@mcrazlaw.com
           irothschild@mcrazlaw.com
           ecfbk@mcrazlaw.com
By:    Michael McGrath, # 6019
        Isaac D. Rothschild, # 25726
        61078.7

(Proposed) Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re | Chapter 11 |
|---|---|
| LODGE PARTNERS, L.L.C., | No. 4:16-bk-13418-BMW |
| Debtor. | **INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §364** |
| EIN:  86-0858146<br>Address:  306 N. Alvernon Way, Tucson, AZ 85711 | |

Upon the motion (the "Motion") dated November ___, 2016 of Lodge Partners, L.L.C. (the "Debtor"), in the in the above-captioned case (the "Case") pursuant to sections 105 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting, among other things:

A.      authorization for the Debtor to obtain postpetition financing up to an aggregate amount of $250,000, with the initial availability not to exceed $1,500,000 ("Interim Amount"), pursuant to the post-petition loan with Lodge in Tucson, LLC ("Post-Petition Lender");

B.     that this Court approve the borrowings pursuant to the terms and conditions of that certain term sheet dated (the "Term Sheet"),[1] a copy of which is attached as Exhibit A hereto, and any documents executed in connection therewith, and authorize the Debtor to execute and deliver, from time to time, all such documents, instruments and agreements, and perform other such acts as may be required, necessary or desirable in connection with the Term Sheet, including, without limitation, the payment of all fees, interest and charges required under the Term Sheet;

C.     the granting to the Postpetition Lender of the Financing Liens in all existing and after personal, tangible and intangible, property of the Debtor and any and all proceeds thereof;

D.     pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of this proposed interim order (the "Interim Order"), authorizing the Debtor to borrow up to the Interim Amount, on an interim basis through and including the date of the Final Hearing (as defined below);

E.     that this Court schedule a final hearing (the "Final Hearing") to be held within 30 days of the entry of the Interim Order to consider the Debtor's motion pursuant to section 364 of the Bankruptcy Code for a final order (the "Final Order") authorizing a debtor-in-possession credit facility acceptable to the Postpetition Lender in its sole discretion containing all of the relevant terms and conditions of the Term Sheet and any additional terms requested by the Postpetition Lender not inconsistent with the Term Sheet (the "Final DIP Agreement"), and approve the form of notice as to the Final Hearing; and

F.     granting to the Debtor such further relief as is just and proper.

Notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtor on the 20 largest unsecured creditors of each Debtor's estate, on

---

[1]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Term Sheet.

the Prepetition First Lien Agent, the Prepetition Second Lien Lenders, the Postpetition Lender, and known holders of prepetition liens against the Debtor's property and the United States Trustee for the District of Arizona (the "U.S. Trustee").

The Interim Hearing having been held by this Court on _____, 2016.

Upon the record made by the Debtor at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefore;

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. <u>Motion is Granted</u>. The Motion is granted. Local Rule 4001-4(c) and (d) is applicable to this Interim Order; provided however this Interim Order shall become effective immediately upon its entry and provide protections granted to the Postpetition Lender with respect to all advances made hereunder.

2. <u>Term Sheet</u>. The Term Sheet is approved and the Debtor is authorized to borrow and the Postpetition Lender is authorized to lend upon the terms and conditions set forth in the Term Sheet.

3. <u>Interim Borrowing</u>. The Debtor is authorized to borrow up to the Interim Amount, in accordance with the Budget, on an interim basis through and including the date of the Final Hearing.

4. <u>Final DIP Agreement</u>. The Debtor is authorized to negotiate, execute and deliver the Final DIP Agreement and all documents related thereto, subject to approval by the Court at the Final Hearing, and to perform all other such acts as may be required, necessary or desirable in connection with the Term Sheet.

5. <u>Security</u>. The Postpetition Lender shall be entitled to a security interest in the Debtor's Personal Property.

6. <u>Postpetition Lien Perfection</u>. This Interim Order shall be sufficient and conclusive evidence of the, and priority of the liens granted herein without the necessity of filing or recording any financing statement or other instrument or document which may

otherwise be required under the law of any jurisdiction or the taking of any action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the liens granted in this Interim Order or the Term Sheet.

7.  <u>Carve-Out</u>. The Post-Petition lien shall be subject to a Carve-Out for all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 § U.S.C. 1930.

8.  <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>.  Based on the findings set forth on the record of this matter and contained in this Interim Order and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the Postpetition Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or lien or priority authorized or created hereby.

9.  <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any other direct, indirect or incidental beneficiary.

10.  <u>Final Hearing</u>.  The Final Hearing to consider the Final Order providing final approval of the Facility is scheduled for _____, 2016. The Debtor shall serve, by United States mail, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order, and the proposed Final Order and the Debtor's Motion, on:  (a) the U.S. Trustee; (b) any party requesting notice; and (c) the creditors holding up to the 20 largest unsecured claims against each Debtor's estate.

1

11.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce

2     this Interim Order according to its terms.

3          **SIGNED AND DATED AS ABOVE.**

4

5     23W7885.DOCX

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Exhibit A

### *TERMS OF SENIOR SECURED SUPERPRIORITY*
### *DEBTOR-IN-POSSESSION FINANCING FACILITY*

        Set forth below are the material terms of the debtor-in-possession credit facility to be made available by Lodge in Tucson, LLC, an Arizona limited liability company (the "Postpetition Lender") to Lodge Partners, an Arizona limited liability company (the "Debtor"). This Term Sheet is intended to enable the Debtor to borrow on an emergency basis, on the terms and subject to the conditions in this term sheet (the "Term Sheet"), up to the Interim Amount (as defined herein) and to serve, as applicable, as the principal terms and conditions of the Final DIP Agreement (as defined herein). This Term Sheet does not contain all the terms, conditions and other provisions of the Final DIP Agreement, provided, however, that the Final DIP Agreement will not contain any additional material conditions to borrowing under the Facility (as defined herein) other than those provided herein. Until approved by the Court (as defined herein), this Term Sheet does not constitute a commitment on behalf of the Postpetition Lender or any of its affiliates to provide the Facility or any other financing.

| | | |
|---|---|---|
| 1. | ***Postpetition Lender:*** | Lodge in Tucson, LLC, an Arizona limited liability company (individually, "LIT"). |
| 2. | ***Debtor:*** | Lodge Partners, an Arizona limited liability company (the "Debtor"). This Term Sheet is intended to enable the Debtor to borrow on an emergency (the "Case") to be filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and to be filed with the United States Bankruptcy Court for the District of Arizona (the "Court"). |
| 3. | ***DIP Facility:*** | The Postpetition Lender shall provide the Debtor with a credit facility (the "Facility") providing for extensions of credit in an aggregate amount not to exceed $100,000 (the "Interim Amount"). Subject to all of the terms and conditions hereof, upon the entry of an order (the "Interim Order") by the Court substantially in the form attached hereto as Exhibit A, availability under the Facility shall not exceed $250,000 (the "Final Amount") unless (I) a debtor-in-possession credit agreement acceptable to the Postpetition Lender in its sole discretion containing all of the terms and conditions hereof and any additional terms requested by the Postpetition Lender not inconsistent herewith (the "Final DIP Agreement") is (a) executed by the Debtor and (b) approved by the Court and (II) the Final Order (as defined herein) is entered by the Court and not subject to any stay. |

4.  ***Maturity Date:***    Unless accelerated as a result of an Event of Default (as defined herein), the Facility will expire and the borrowings thereunder will be immediately due and payable upon the earlier of (i) the date that is two years from the Petition Date or (ii) the effective date of a plan of reorganization in the Case that has been confirmed by an order of the Court (such date being the "Maturity Date").

5.  ***Purpose and Use of Proceeds:***    The Facility is intended to enable the Debtor to borrow, on the terms and subject to the conditions set forth in this Term Sheet, up to the Interim Amount or the Commitment Amount, as applicable, in order to fund working capital and capital expenditure needs and general corporate purposes of the Debtor.

6.  ***Interest:***    The principal amount of the loans outstanding under the Facility shall bear interest at a rate of 8% per annum.

7.  ***Interest Payments:***    Interest on each loan shall be payable in arrears at maturity.

8.  ***Budget Variance:***    The Debtor shall use the loans under the Facility and any cash in the Debtor's estate solely to make expenditures provided for in the Budget; provided, that the Debtor may exceed the expenditures provided for in the Budget on a cumulative basis for any line item by 10% without approval of LIT.

9.  ***Closing Fee:***    There is no fe payable upon closing of the Facility.

10. ***Security:***    The Postpetition Lender shall be entitled to the following security a lien on all personal property of the Debtor – tangible or intangible and currently in the possession of the Debtor or acquired after the funding of the loan. This security shall be subject to a carve out for fees payable to the clerk of the bankruptcy court and any fees owed to the United States Trustee Office.

11. ***Postpetition Lien Perfection***:    The Interim Order shall provide that it is sufficient and conclusive evidence of the validity, perfection, and priority of the Financing Liens without the necessity of filing or recording any financing statement or other instrument or document which

may otherwise be required under the law of any jurisdiction or the taking of any action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the Financing Liens or to entitle the Postpetition Lender to the priorities granted herein. Notwithstanding the foregoing, the Postpetition Lender may take action, and shall be granted relief from the automatic stay, to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the Financing Liens granted to the Postpetition Lender, and the Debtor shall execute and deliver to the Postpetition Lender all such financing statements, mortgages, notices and other documents as the Postpetition Lender may reasonably request in connection therewith. The Final Order shall seek cross-collateralization with the pre-petition $100,000 loan made by LIT to the Debtor.

12.    ***Events of Default:***    The Facility will terminate and all amounts owing thereunder will immediately be due and payable without action or notice if any of the following (each an "<u>Event of Default</u>") shall occur:  (i) a chapter 11 trustee is appointed with respect to any of the Case; (ii) a responsible officer is appointed with respect to any of the Case; (iii) an examiner with expanded powers is appointed with respect to the Case; (iv) conversion of the Case to a case under Chapter 7 of the Bankruptcy Code; (v) the Case is dismissed; (vi) the granting of relief from the automatic stay to any creditor as to any material asset or that could reasonably be expected to have an adverse impact on the Debtor's business; (vii) entry of an order without the prior consent of the Postpetition Lender amending, supplementing or otherwise modifying the Interim Order or the Final Order; (viii) reversal, vacatur or stay of the effectiveness of the Interim Order or the Final Order; (ix) impairment of the Financing Liens granted with respect to the Facility in any respect; (x)  subject to the permitted variance, proceeds of the Facility are used to make a payment that is not in compliance with the Budget; (xi) an order, reasonably acceptable to the Postpetition Lender approving the Final DIP Agreement (the "<u>Final Order</u>"), has not been entered by the Court by the

date that is thirty (30) days (or such longer period as agreed to by the Postpetition Lender) after the date on which the Interim Order is entered; or (xii) the Debtor's exclusivity is terminated.

The Final DIP Agreement will contain additional Events of Default to be agreed that are usual and customary for debtor-in-possession loans.

| | | |
|---|---|---|
| 13. | **_Remedies Upon Events of Default:_** | If an Event of Default shall have occurred and is continuing, the Postpetition Lender's obligations to provide funding under the Facility shall cease immediately and, after the Debtor and any statutory committee appointed in the Case have received five (5) business days' notice thereof, the principal of and all accrued interest and fees and all other amounts owed to the Postpetition Lender under the Interim Order, the Final Order or the Final DIP Agreement shall be immediately due and payable, and the Postpetition Lender shall have the rights and remedies provided in the Interim Order, the Final Order or the Final DIP Agreement, as applicable.<br><br>Notwithstanding the occurrence of an Event of Default or any other event, all of the rights, remedies, benefits, and protections provided to the Postpetition Lender, the Prepetition First Lien Lender, or the Prepetition First Lien Agent under the Interim Order, the Final Order, or the Final DIP Agreement shall survive the occurrence of an Event of Default. |
| 14. | **_Modification of the Automatic Stay:_** | The Postpetition Lender shall have the right to request an expedited hearing upon to seek lifting of the automatic stay on the occurrence and during the continuance of an Event of Default and the Debtor will use best efforts to schedule, and agrees not to oppose an expedited hearing before the court requesting the relief. The Debtor will further agree not to oppose the relief requested seeking to lift the automatic stay except on the grounds that no Event of Default has occurred or is continuing. |
| 15. | **_Further Assurances:_** | The terms and conditions set forth in this Term Sheet and all other provisions not contained herein, as set forth in the Final DIP Agreement, shall be |

subject to the Postpetition Lender's approval; provided any additional terms requested by the Postpetition Lender are not inconsistent herewith. The Debtor shall execute any and all further documents, financing statements, agreements and instruments, and take all further action (including filing Uniform Commercial Code and other financing statements) that the Postpetition Lender may reasonably request, in order to effectuate the transactions contemplated by the Term Sheet, the Final DIP Agreement, or the Interim Order and in order to grant, preserve, protect and perfect the validity and priority of the security interests created or intended to be created by the Term Sheet, the Final DIP Agreement, the Final Order or the Interim Order.

16.   ***Other Terms:***     The Final DIP Agreement will provide additional terms that are usual and customary for debtor-in-possession loans.

17.   ***No Marshaling:***     The Postpetition Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Collateral.

18.   ***Section 552(b):***     The Postpetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Postpetition Lender with respect to proceeds, products, offspring or profits of any of the Collateral.

19.   ***Expenses:***     The Debtor shall reimburse the Postpetition Lender for all reasonable out-of- pocket costs and expenses incurred in connection with the transaction, including, without limitation, related due diligence and preparation, negotiation, execution, delivery administration and enforcement of the definitive documentation and ongoing expenses related to the Facility and the Case.

20. ***Assignments and Participations:***     The Postpetition Lender may sell or assign all or any portion of its Commitment and/or loans after notice to the Debtor.  The Postpetition Lender may grant participations in all or any of its Commitment or loans.

21. ***Governing Law:***     This Term Sheet, the Facility and all documentation in connection with the Facility shall be governed by the laws of the State of Arizona applicable to agreements made and performed in such state, except as governed by the Bankruptcy Code.

22. ***Amendments and Waivers:***     No amendment or waiver of any provision of this Term Sheet or any related loan documents, as applicable, or consent to any departure by the Debtor therefrom, shall in any event be effective without the written consent of the Debtor and the Postpetition Lender.

## Schedule 1 – Budget

See Attached

## **Exhibit A – Interim Order**

See Attached